## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| THOMAS R. MERKEL, | Case No. 24-14828 |
| Debtor. | Hon. Deborah L. Thorne |
| AMERICAN COMMUNITY BANK & TRUST, | |
| Plaintiff, | |
| v. | Adv. No. |
| THOMAS R. MERKEL, | |
| Defendant. | |

### COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Plaintiff, American Community Bank & Trust ("**Bank**" or "**Plaintiff**"), by and through its undersigned counsel, hereby files this complaint (the "**Complaint**") to determine the dischargeability of debt pursuant to Sections 523(a)(2)(A), (a)(2)(B), and (a)(6) of Title 11 of the United States Code (the "**Bankruptcy Code**") against Thomas R. Merkel ("**Debtor**" or "**Defendant**"), and, in support thereof, Plaintiff alleges as follows:

### Nature of Claims

1. This is an action seeking the non-dischargeability of the Plaintiff's debt arising from Defendant's false pretenses, false representations and actual fraud related to Defendant's request for a loan for his solely owned and controlled companies, South Water Signs, LLC, South Water Signs and Lighting, Inc. and SWS Chicago LLC (collectively, the "**Company**"), which he personally guaranteed.

-1-

55934065.2

**Jurisdiction and Venue**

2. This is an adversary proceeding filed under Federal Rules of Bankruptcy Procedure, Rule 7001, *et seq.*, to object to dischargeability of the Debtor's debt to Plaintiff under to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6).

3. This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.

4. This is a core proceeding pursuant to the provisions of 28 U.S.C. § 157(b)(2)(A) and (I).

5. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1409.

**Parties**

6. Plaintiff is an Illinois state banking association principally located in Woodstock, Illinois.

7. Defendant is an individual residing in Chicago, Illinois and the Debtor in the above-captioned bankruptcy case.

**Background**

A. **Chapter 11 Case**

8. On October 5, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**") [Bk. Dkt No. 1].

9. On February 27, 2025, the Chapter 11 Case was converted to Chapter 7 (the "**Chapter 7 Case**"). On the same date, Gregg Szilagyi, was appointed the Chapter 7 Trustee for the Debtor's bankruptcy estate (the "**Trustee**") [Bk. Dkt. No. 90].

10. The Bank is a creditor in this proceeding, having filed a proof of claim on November 20, 2024, in the amount of $2,812,077.65, which was amended on January 14, 2025, only to change the Bank's address (the "**Proof of Claim**"). [Claim Nos. 14-1, 14-2].

11. The Bank's debt arose from a judgment it obtained on July 17, 2024, in the amount of $2,812,077.65 (the "**Judgment**") in the case known as *American Community Bank & Trust v. South Water Signs, LLC, South Water Signs and Lighting, Inc., SWS Chicago, LLC, and Thomas Merkel,* pending in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County. A copy of the Judgment is attached to the Proof of Claim.

12. The Judgment arose out of the Debtor's personal guaranty of a loan between the Bank and the Company.

13. On October 20, 2022, the Company executed a loan in favor of the Bank in the principal amount of $1,000,000.00 (the "**ACB Loan**"). As part of the ACB Loan, the Debtor executed (i) a Commercial Guaranty that he signed individually in favor of the Bank and (ii) Commercial Security Agreement which stated as follows:

> **Grantor represents and warrants to [the Bank] that it holds good and marketable title to the Collateral free and clear of all liens and encumbrances except for the lien to [the Bank].**

*See* Title Section of Commercial Security Agreement (emphasis added). A copy of the documents evidencing the ACB Loan are attached hereto as Exhibit A.

14. On December 22, 2022, the Company increased the ACB Loan to $5,000,000.00. *See* Exhibit A.

15. On December 20, 2023, the Company modified the ACB Loan, reducing the principal amount to $3,000,000.00. *See* Exhibit A.

16. On October 27, 2020, prior to the filing of the Chapter 11 Case, Afterdita Merkel ("**Dita**") filed her petition to dissolve her marriage from the Defendant, which remains pending in the Circuit Court of Cook County under Case No. 2020 D 007783 (the "**Divorce Case**").

17. On May 21, 2021, the Debtor financed the Company's business operations with a senior secured loan from Fifth Third Bank ("**FTB**") in the amount of $3,000,000.00 ("**FTB Loan**"). FTB also provided a credit card agreement to the Company with a maximum credit limit of $700,000.00.

18. On December 10, 2021, the court in the Divorce Case appointed Thomas Levato, *sua sponte*, as receiver for the Company (the "**Receiver**").

19. On May 18, 2022, the Court, for good cause, expanded the Receiver's powers to fully operate the Company as of June 2, 2022.

20. On May 24, 2022, FTB filed a complaint against the Company and the Debtor seeking to recover the outstanding balance of $3,706,000.00, plus attorneys' fees, interest and costs owed under the FTB Loan and recover possession of the Company's collateral. A copy of the Complaint, which includes the documents evidencing the FTB Loan, are attached hereto as Exhibit B.

21. On June 2, 2022, FTB froze the Company's funds and prohibited the Receiver from using those funds to operate the Company.

22. On June 6, 2022, the Receiver notified the Defendant and Dita Merkel (collectively, the "**Merkels**") advising them that the Company was in financial crisis and suggested the following options: (i) shutter the company's business operations; (ii) negotiate a short-term forbearance with FTB; or (iii) pay FTB in full with non-company assets.

23. On June 23, 2022, the Merkels reached an agreement with FTB, which provided that the Merkels would, *inter alia*, (i) purchase the FTB Loan for $1.5 million; (ii) retire two of the credit facilities held by FTB; (iii) partially divide their marital property (2142 N. Kenmore property going to Dita and the 460 Huron Street property (the "**Huron Property**") to the Debtor (both of which are assets of the Debtor's bankruptcy estate)) and remove and replace the Receiver appointed by the Court in the Divorce Case.

24. On July 13, 2022, the Court approved the Merkels' acquisition of the FTB Loan pursuant to an Assumption and Assignment Agreement dated June 24, 2022 (the "**Assignment**"). The Merkels, together with the Receiver, executed the Assignment, which allowed the Merkels to acquire the FTB Loan. A copy of the Assignment is attached hereto and incorporated herein as Exhibit C.

25. By virtue of the Assignment, the Merkels stepped into the shoes of FTB and held all rights, power and interest that FTB had to the Company and the Company's assets.

26. On September 12, 2022, the Defendant filed an emergency motion to remove the Receiver and terminate the receivership (the "**Motion**"). The Motion stated *inter alia* that the Receiver's lawyers had (i) acted adversely to the Defendant's interest; (ii) made material misrepresentations to the Defendant's attorney; and (iii) contacted FTB, the largest creditor of the Company, without authority. A copy of the Motion is attached as Exhibit D.

27. On September 27, 2022, the Court terminated the Receiver, which opened up the door for the Defendant to obtain financing on behalf of the Company.

28. Three weeks later, on October 20, 2022, the Debtor secured the ACB Loan for the Company, which he personally guaranteed. *See,* Exhibit A.

29.     On May 22, 2024, Dita recorded the Assignment with the Illinois Secretary of State. On the same date, Dita filed a continuation statement with the Illinois Secretary of State.

30.     On July 18, 2024, the Bank recorded its judgment against the Huron Property. A copy of the Bank's recorded judgment is attached hereto and incorporated herein as <u>Exhibit E</u>.

31.     On August 21, 2024, the Bank served a citation on a bank account on the Debtor's Merrill Lynch Account (ending in 1283). A copy of the Bank's citation is attached hereto and incorporated herein as <u>Exhibit F</u>.

**COUNT I**

**<u>Objection to Discharge of Debt under § 523(a)(2)(A) & (B)</u>**

32.     Plaintiff incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

33.     Pursuant to Sections 523(a)(2)(A) &(B) of the Bankruptcy Code, a debt for money, property, services, or an extension, renewal or refinancing of credit, is not dischargeable to the extent obtained by –

(A)     false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

(B)     use of a statement in writing-

(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with e intent to deceive.

34.     The Defendant's obligations to Plaintiff arose out of the Defendant knowingly and intentionally making materially false statements in writing, in the Commercial Security Agreement.

-6-

35. The Defendant falsely represented the financial condition of the Company, the Debtor's solely owned businesses, and therefore, an insider under the Bankruptcy Code.

36. Specifically, in the Commercial Security Agreement, the Defendant stated the following:

> **Grantor represents and warrants to [the Bank] that it holds good and marketable title to the Collateral free and clear of all liens and encumbrances except for the lien to [the Bank].**

*See* Exhibit A.

37. Knowing that the Defendant and Dita held a first lien position on the assets of the Company by virtue of the Assignment, the Defendant's representations in the Commercial Security Agreement were false.

38. With the intention to induce Plaintiff to loan money to the Company, which was guaranteed by the Debtor, the Defendant made the false representations to the Plaintiff that the Company held the Collateral, pledged to the Plaintiff, free and clear of all liens and encumbrances except for the lien to the Plaintiff.

39. As a direct result of Defendant's fraudulent misrepresentations and in reliance on Defendant's fraudulent misrepresentations, Plaintiff entered into the ACB Loan.

40. As a direct result of Defendant's fraud, Plaintiff suffered monetary damages for the unpaid amounts due to the Plaintiff under the ACB Loan plus reasonable attorneys' fees, interest and costs as provided for in the ACB Loan.

41. Accordingly, Defendant's debt to Plaintiff is non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B).

WHEREFORE, Plaintiff, American Community Bank & Trust, respectfully requests the entry of a judgment in its favor and against Defendant, Thomas Merkel, finding that the debt owed

by Thomas Merkel to American Community Bank & Trust as evidenced by the Judgment, along with interest, costs and attorneys' fees allowed under the ACB Loan, are not subject to discharge under Sections 523(a)(2)(A) and (a)(2)(B) and grant Plaintiff such other and further relief that this court deems just and proper under the circumstances.

## COUNT II

### Objection to Discharge of Debt under § 523(a)(6)

42. Plaintiff incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

43. Pursuant to section 523(a)(6) of the Bankruptcy Code, a debt for "willful and malicious injury" by a debtor to another or to the property of another is a non-dischargeable debt.

44. Knowing that the Defendant and Dita held a first lien position on the assets of the Company by virtue of the Assignment, the Defendant's representations in the Commercial Security Agreement were false.

45. As a direct result of Defendant's fraudulent misrepresentations and in reliance on Defendant's fraudulent misrepresentations, Plaintiff entered into the ACB Loan.

46. Defendant willfully, wrongfully, knowingly and maliciously granted the Plaintiff a second lien position on the assets of the Company (rather than a first lien position) at the time the Plaintiff entered into the ACB Loan.

47. Not only did the Defendant's debt to Plaintiff arise as a result of his willful and malicious actions and conduct, but the damages sustained by the Plaintiff were a direct result of the Defendant's willful and malicious actions and conduct.

48. The debt owed to the Plaintiff is the result of the willful and malicious actions of the Defendant against the Plaintiff which were intended to cause, and did, cause, the harm, damages and injury to the Plaintiff.

49. As a direct and proximate result of Defendant's wrongful and willful misappropriation of Plaintiff's money, Plaintiff has been damaged in the amount of the Judgment plus attorneys' fees, interest and costs as provided under the ACB Loan.

50. Accordingly, Defendant's debt to Plaintiff is non-dischargeable under 11 U.S.C. § 523(a)(6).

WHEREFORE, Plaintiff, American Community Bank & Trust, respectfully requests the entry of a judgment in its favor and against Defendant, Thomas Merkel; finding that the debt owed by Thomas Merkel to American Community Bank & Trust, along with interest, costs and attorneys' fees allowed under the ACB Loan, are not subject to discharge under Section 523(a)(6) as well as such other and further relief that this court deems just and proper under the circumstances.

Dated:  August 12, 2025                    Respectfully submitted,

                                           **SAUL EWING LLP**

                                           /s/ Michelle G. Novick
                                           Michelle G. Novick (Bar No. 6207045)
                                           161 N. Clark Street, Suite 4200
                                           Chicago, IL 60601
                                           Telephone: 312-876-7899
                                           Email: michelle.novick@saul.com

                                           *Attorneys for American Community Bank & Trust*

-9-

55934065.2