**UNITED STATES BANKRUPCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case no. 24-14828 |
| | ) | |
| THOMAS R. MERKEL, | ) | Chapter 7 |
| | ) | |
| Debtor, | ) | Honorable Deborah L. Thorne |
| | ) | |
| AMERICAN COMMUNITY BANK, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. no. 25-00257 |
| v. | ) | |
| | ) | |
| THOMAS R. MERKEL, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff American Community Bank (ACB) seeks an order finding its claim against Thomas Merkel nondischargeable under sections 523(a)(2)(A), (a)(2)(B), and (a)(6) of the Bankruptcy Code. The court held a trial on June 15, 2026, during which ACB presented exhibits and testimony. Because Thomas consistently failed to cooperate during discovery and to submit exhibits or other required materials to the court under the Pretrial Order (Dkt. 24), the court barred Thomas from introducing any documents and from presenting testimony at trial. (Dkt. 48). ACB filed a motion for default judgment which the court denied because, as plaintiff, ACB has the burden to demonstrate that the claim was nondischargeable by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). ACB met its burden as explained below, and the claim for $2,812,077.65 against Thomas is nondischargeable under section 523(a)(2)(B).

## JURISDICTION

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  This case is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper under 28 U.S.C. § 1409(a).

## BACKGROUND

### 1. Fifth Third Bank Loan

In May 2019, Thomas, on behalf of South Water Signs, LLC, and South Water Signs and Lighting, Inc. (collectively SWS), entered into an asset-based Business Loan Agreement with Fifth Third Bank.  Thomas agreed to guarantee the amounts borrowed under the Agreement until all amounts were repaid.  Initially, SWS executed a Promissory Note for $2,000,000, promising to repay the outstanding balance two years later.  The Promissory Note was secured by a pledge on all assets of the two entities and Thomas' continuing guaranty of all amounts owed.  When the Promissory Note was not repaid two years later, Fifth Third extended additional credit, and Thomas executed additional notes for $500,000 and $3,000,000 (Dkt. 37, Ex. 51 at 1 and Ex. 52 at 1).  The additional extension of credit did not solve whatever financial problems Thomas' companies were having, and in May 2022, Fifth Third filed a complaint seeking to recover $3,706,000 plus other costs.  It froze access to funds preventing SWS from continuing operations. (Dkt. 18 at 6-7).

To resolve the disputes with Fifth Third, Aferdita Merkel[1] and Thomas agreed to acquire the Fifth Third loan by executing an Assignment and Assumption Agreement,

---

[1] Aferdita "Dita" Merkel is Thomas' estranged wife.

allowing the Merkels to stand in the position of Fifth Third for the amounts owed by SWS.[2] (Dkt. 37, Ex. 7 at 1, 14).

### 2. American Community Bank Loan

In October 2022, Thomas approached William Kornit, a childhood acquaintance and the Senior Business Development Officer and Account Officer at ACB, about opening a revolving line of credit for his three companies.[3]  To obtain approval, Thomas provided Mr. Kornit with requested documents such as tax returns and personal and entity financial statements.  During its due diligence, ACB conducted searches of public records, including the UCC documents and title and judgment searches.  Specifically, ACB reviewed UCC filings against SWS+ (Dkt. 37, Ex. 28 at 2).

During its search of public documents, ACB discovered that Fifth Third was still on record as holding a lien on SWS personal property.  When Mr. Kornit approached Thomas about the findings, Thomas assured him that Fifth Third no longer held any liens and the loan had been paid off from the sale of SWS+'s real property.  He further assured Mr. Kornit that ACB would hold a first position on all SWS+ assets free and clear of all liens. (Dkt. 50 at ¶ 32). Nowhere in the public records or in information provided by Thomas did ACB find the Fifth Third Assignment or any termination of its lien. (Dkt. 50 at ¶ 33).  At trial, Mr. Kornit testified that ACB had no reason to doubt Thomas.  Mr. Kornit stated that banks often do not file notices of lien termination when they are paid off unless requested, so ACB was not

---

[2] Around the same time, Thomas was involved in a divorce proceeding with Aferdita. (Dkt. 18 at 5-6).  Because the Merkels were in the middle of divorce proceedings, the agreement to acquire the Fifth Third Notes was approved by the Circuit Court of Cook County.

[3] South Water Signs, LLC; South Water Signs and Lighting, Inc.; and SWS Chicago, LLC (collectively SWS+).  SWS Chicago was not a participant in the Fifth Third loans.  The Merkel entities are referred to as SWS+ because of the additional collateral that SWS Chicago provided for the ACB loans.

concerned and provided Thomas with his line of credit.  Mr. Kornit and Mr. Francois[4] both testified that ACB would not have extended the loan to Thomas had it known it would not have a first priority lien on SWS+'s assets.

While Thomas had many chances to disclose that he and Aferdita held the former Fifth Third position, he failed to do so when executing documents with ACB.  Thomas' Personal Financial Statement and South Water Signs, LLC's Balance Sheet did not disclose the assignment of Fifth Third's position. (Dkt. 37, Ex. 12 at 2 and Ex. 14 at 2-3).  When Thomas signed the Disbursement Request and Authorization, he represented that all information provided was "true and accurate." (Ex. 16).  Additionally, in the Commercial Security Agreement (CSA) he represented and warranted that ACB held "good and marketable title to the Collateral, free and clear of all liens and encumbrances, except for the lien of this Agreement." (Ex. 17 at 2).

In October 2022, ACB and Thomas closed on a loan in the principal amount of $1,000,000. (Dkt. 37, Ex. 15 at 1).  To secure the loan, SWS+ granted a security interest to ACB in inventory, equipment, accounts, and other collateral.  ACB perfected its interest by filing a UCC-1 Financing Statement on October 26, 2022. (Ex.  22).  In December 2022, Thomas returned to ACB for a second line of credit.  ACB then increased the amount to $5,000,000. (Ex. 25 at 1).  At that time, Thomas restated and re-signed his personal financial statement, again failing to disclose the assignment agreement with Fifth Third. (Ex. 23 at 3).  One year later, ACB modified the loan, reducing the principal amount to $3,000,000. (Ex. 29 at 1).  Mr. Kornit testified that ACB was unwilling to continue lending at the same level because Thomas did not provide updated financial statements in accordance with the loan agreement.  Again,

---

[4] Rick Francois is the President of American Community Bank. He was the second witness for ACB.

4

in January 2023, in response to an inquiry about the secured position Fifth Third appeared to hold on SWS+ assets, Thomas emailed Mr. Kornit stating, "Debits [sic] are done they are over." (Dkt. 37, Ex. 33 at 1).  This fraudulent reassurance was made even though Thomas and Aferdita held the assignment of the Fifth Third position on SWS+ collateral.  Eventually, Thomas and his companies defaulted on the loan by repeatedly failing to provide financial information and repay the amount owed.  ACB filed a complaint and eventually obtained a judgment against Thomas in the amount of $2,812,077.65.[5]

Once ACB attempted to collect on the judgment against the Merkels and their entities, ACB discovered that, contrary to Thomas' repeated assurances, the Merkels were in first position ahead of ACB on the collateral and that ACB did not have an interest in the collateral free and clear of all other liens.  Mr. Francois testified that ACB discovered that Thomas personally assumed the Fifth Third loan sometime in 2024 when certain real estate on Church Road was sold at an auction.  ACB made a claim for the proceeds from that sale, but Aferdita also attempted to collect.[6] (Dkt. 37, Ex. 34 at 1).  The real status of the Fifth Third loan became clear to ACB as it learned it was not first in line for SWS collateral: Aferdita and Thomas were. (Dkt. 37, Ex. 38 at 7).

### 3.  The Bankruptcy Case

In October 2024, Thomas filed a petition under chapter 11.  The case was converted to chapter 7 in February 2025.   ACB filed a secured claim in the amount of $2,812.077.65 based on the judgment. (Dkt. 37, Ex. 39 at 2).  ACB then filed a complaint to determine the

---

[5] In the Circuit Court of the Eighteenth Judicial Circuit, DuPage County in *American Community Bank & Trust v. South Water Signs, LLC, South Water Signs and Lighting, Inc., SWS Chicago, LLC and Thomas Merkel* (Case No. 2024 LA 000562). (Dkt. 37, Ex. 35).
[6] Aferdita had made an amended UCC financing statement in May 2024 recording the Fifth Third Assignment and providing notice of her position as to the SWS collateral.  (Ex. 34 at 1).

dischargeability of the $2,812,077.65 debt in the Chapter 7 bankruptcy proceeding, claiming that Thomas obtained the loan from ACB under "false pretenses, false representations and actual fraud" by failing to disclose his personal claim on SWS assets in financial documents given to ACB and affirmatively stating that ACB would have first lien position. (Dkt. 1 at ¶ ¶ 1, 35-37).

## DISCUSSION

ACB brings three claims of non-dischargeability under the Bankruptcy Code, objecting to dischargeability under sections 523(a)(2)(A), (a)(2)(B), and (a)(6). Section 523(a)(2)(A) "bars discharge of debts arising from 'false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018). Section 523(a)(2)(B) "bars discharge of debts arising from a materially false statement . . . respecting the debtor's . . . financial condition if that statement is in writing." *Id*. (internal quotation marks omitted). Section 523(a)(6) exempts a discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." A discharge exemption is construed strictly against a creditor and liberally in favor of the debtor. *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000). To prevail, ACB only needs to prove nondischargeability under one section, which it does under section 523(a)(2)(B).

### A. The debt is not dischargeable under 11 U.S.C. § 523(a)(2)(B).

There are four elements that must be satisfied for a debt to be non-dischargeable under section 523(a)(2)(B). First, the "statement in writing" must be "materially false." 11 U.S.C. § 523(a)(2)(B)(i). Second, it must be a statement "respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(B)(ii). Third, the creditor must have

"reasonably relied" on the statement. 11 U.S.C. § 523(a)(2)(B)(iii).  Four, the debtor must have "caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B)(iv). ACB bears the burden of demonstrating by a preponderance of the evidence that the exception to discharge applies. *In re Morris*, 223 F.3d at 552; *See also Grogan*, 498 U.S. at 287 (finding Congressional intent for the preponderance of evidence standard for fraud as a "fair balance" between "conflicting interests.").

### i. Thomas' statement was materially false and in writing.

A statement is materially false "if it paints a substantially untruthful picture of financial conditions by misrepresenting information of the type that would normally affect the decision to grant credit." *In re Bailey*, 145 B.R. 919, 930 (Bankr. N.D. Ill. 1992) (internal quotation marks omitted).  "The omission, concealment, or understatement of liabilities will ordinarily constitute a materially false statement." *4 Collier on Bankruptcy* ¶ 523.08 (Richard Levin & Henry J. Sommer eds., 16th ed. 2026).

Throughout the due diligence period on each of the loans ACB extended, Thomas did not disclose orally or in writing that he held the Fifth Third position and that the note and security interest had been assigned to him and Aferdita.  He had many opportunities to disclose this and failed to honestly answer.  Mr. Kornit and Mr. Francois both testified that ACB would not have extended credit to SWS+ had this been disclosed.  The court finds that the lack of financial disclosure constituted a materially false statement in writing, concealing SWS+'s true financial condition through his omission.

### ii. The statements respected Thomas' and SWS+'s financial condition.

A statement "respecting the debtor's or an insider's financial condition" is the second element that must be met. 11 U.S.C. § 523(a)(2)(B)(ii).  If a statement has a "direct relation

7

to or impact on the debtor's overall financial status" it is "respecting a debtor's financial condition." *In re Cosman*, 616 B.R. 358, 368 (Bankr. N.D. Ill. 2020) (internal quotation marks omitted). "A statement about a single asset can be a 'statement respecting the debtor's financial condition.'" *Appling*, 584 U.S. at 712.

Although Thomas was aware that he and Aferdita assumed the rights of the SWS Fifth Third loan, he did not disclose this to ACB. He lied twofold. He lied about his own assets and about the liabilities of SWS+, businesses he controlled. He certified on his personal financial statement that he did not personally hold a security interest in the collateral Fifth Third previously held and which ACB took an interest. He knew that ACB would not hold the "[c]ollateral free and clear." These misrepresentations about his personal financial situation as well as that of SWS+'s liability were both false statements respecting his financial condition and the financial condition of an insider.

### iii.   ACB reasonably relied on Thomas' statements.

The reasonableness of a creditor's actual reliance is analyzed on a case-by-case basis. *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989). "Reasonableness is circumstantial evidence of actual reliance." *In re Garman*, 643 F.2d at 1256 (7th Cir. 1980). Courts "should not undertake a subjective evaluation and judgment of a creditor's lending policy and practices." *In re Gunsteen*, 487 B.R. 887, 902 (Bankr. N.D. Ill. 2013) (quoting *In re Garman*, 643 F.2d at 1256 (7th Cir.1980) (internal quotation marks omitted).[7]  The reasonableness of a creditor's reliance "does not generally require [a creditor] to conduct an investigation prior

---

[7] *See also In re Morris*, 223 F.3d at 553 ("[D]istrict courts are not to use the reasonable reliance requirement of section 523(a)(2)(B) to second-guess a creditor's lending decisions."); *In re Kilaru*, 552 B.R. 806, 813-14 (Bankr. N.D. Ill. 2016) (finding the court could not "say that [the Creditor] was actively ignoring potential warning signs" when the Creditor was "actively following its guidelines and [it] showed no concern with the information that the Debtor provided.").

8

to entering into agreements with prospective debtors." *In re Beach*, 651 B.R. 359, 375 (Bankr. E.D. Wis. 2023) (quoting *In re Morris*, 223 F.3d at 554). One way to determine reasonableness is "whether the creditor followed its own established lending procedures." *In re Kilaru*, 522 B.R. at 812 (Bankr. N.D. Ill. 2016). Reliance may be unreasonable where "there is no 'attempt to ascertain [a prospective debtor's] true financial condition . . .'" *Id*. A creditor "cannot close its eyes to obvious red flags that should alert it." *In re Gunsteen*, 487 B.R. at 902. Nonetheless, "[a]s long as there is some attempt to ascertain financial condition, courts are unwilling to second-guess lending decisions." *In re Beach*, 651 B.R. at 376.

Both Mr. Kornit and Mr. Francois testified that they relied on Thomas' written disclosures. They individually stated that had ACB known about the assignment of the Fifth Third loan to the Merkels, it would not have extended a line of credit.

It was not unreasonable for ACB to approve the line of credit. While ACB was aware that Fifth Third had not filed a termination statement of its previous interest in the SWS+ collateral, Mr. Kornit testified that ACB performed its standard due diligence, including requesting tax returns, business statements, personal financial statements, and bank statements. ACB also conducted public records research and completed lien, judgment, and credit searches. ACB actively followed its guidelines in conducting this due diligence to learn about Thomas' true financial condition. When Mr. Kornit approached Thomas about the Fifth Third lien he discovered, Thomas said everything was paid and there was no lien. According to Mr. Kornit, it was not unusual for paid-off liens to show up on searches as there must be a request for them to be removed. Mr. Kornit added that, in his review of the documents Thomas provided and what he found in the public record, he never saw the assumption and assignment agreement with Fifth Third recorded. ACB did not find it particularly concerning

to see a lien in the results, so no red flags were raised.[8]  ACB approved the loan and filed UCC-1 Financing Statements perfecting its position.

### iv.     Thomas intended to deceive ACB with his statement.

A court "may consider the totality of the circumstances to make an inference as to whether the debtor submitted a financial statement with an intent to deceive." *4 Collier on Bankruptcy* ¶ 523.08.  A "reckless disregard for the truth or falsity of a statement combined with the magnitude of the resulting misrepresentation may combine to support the inference of an intent to deceive." *Id.*; *see also In re Corrigan*, 2003 WL 261919, at *10 (Bankr. N.D. Ill. Feb. 6, 2003) ("An intent to deceive may also be inferred from surrounding circumstances or by demonstrating reckless disregard for the accuracy of the financial statement.").  Intent to deceive may be logically inferred when there are "[c]ontinuing omissions in the context of the representations of completeness in the financial statements," which "the person knows or should know, will induce another to make a loan." *In re Garman*, 643 F.2d at 1260-61.

Thomas made false representations on multiple documents.  He signed a Promissory Note and other documents where he acknowledged and pledged collateral to ACB. (Ex. 15 at 2).  He lied and did not tell ACB about the Fifth Third loan assumption when ACB made the initial loan in 2022, the increased loan in December 2022, or when ACB amended the loan in 2023.  He still signed the Disbursement Request & Authorization form and represented that all the information provided was true and accurate. (Ex. 16).  He signed the CSA representing

---

[8] This court believes ACB could have confirmed Thomas' word by contacting Fifth Third about the loan or requiring Thomas to obtain a termination statement before the bank would approve a loan. Mr. Kornit appeared credible in his testimony and the cross-examination did not change the court's impression of his credibility.  Mr. Francois said it did not make sense for a borrower to not be truthful and accurate, and the borrower should take ownership.  This court questions relying solely on the borrower's word when it could have called Fifth Third or demanded that Thomas obtain the termination statement.  But in the end, ACB relied upon the numerous written financial statements provided by Thomas under oath.  The court did not find this unreasonable.

that ACB would hold good and marketable title to SWS+'s collateral free and clear of all liens, all the while holding a superior lien on the SWS+ collateral himself. (Ex. 17 at 2).  Thomas lied over and over again about the financial condition of SWS+ and himself.  He continued to lie through his purposeful omissions, which enticed ACB into making a loan to SWS+.  The testimony was clear that had ACB known it was taking a lien on collateral that was not "free and clear" of liens, it would not have provided the loan.  The court finds that Thomas intended to deceive ACB, and the ACB claim is non-dischargeable under section 523(a)(2)(B).

### B.  The debt remains dischargeable under 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) states a debt is dischargeable to the extent it is obtained by "false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition*." 11 U.S.C. § 523(a)(2)(A) (emphasis added). Historically, a "statement respecting . . . financial condition" of the debtor has been "consistently construed . . . to encompass statements addressing just one or some of a debtor's assets or liabilities." *Appling*, 584 U.S. at 721.  As a result, "a statement about a single asset can be a 'statement respecting the debtor's financial condition.'" *Id*. at 712.

Section 523(a)(2)(A) of the Bankruptcy Code explicitly excludes statements about a debtor's or insider's financial condition.  ACB's complaint alleges Thomas misrepresented his own first lien position on SWS+ collateral by signing the CSA, failing to include his position in financial documents, and falsely verifying that ACB had first position on  SWS+ assets. (Dkt. 1 at ¶ 34).  These are statements about Thomas' personal financial condition.  Additionally, his statement that ACB would hold "good and marketable title [of SWS+] . . . free and clear" is a statement based off SWS+'s financial condition and not his own.  Because ACB's allegation

falls under a statement respecting Thomas' financial condition, ACB does not have a legal claim under 11 U.S.C. § 523(a)(2)(A).

### C. The debt remains dischargeable under 11 U.S.C. § 523(a)(6).

Section 523(a)(6) relates to non-dischargeability due to "willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). To succeed on this claim, a creditor "must show three elements by a preponderance of the evidence (1) that the Debtor intended to and caused an injury; (2) that the Debtor's actions were willful; and (3) that the Debtor's actions were malicious." *In re Dobek*, 278 B.R. 496, 511 (Bankr. N.D. Ill. 2002). Willful means "a palpable intent to cause injury, not merely the commission of an intentional act that happens to result in an injury." *Id*. (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). Under section 523(a)(6), malice must show an intent to cause harm, so "recklessness or negligence will not suffice." *Id*. (quoting *Geiger,* 523 U.S. at 64). A court can find it "unnecessary and superfluous" to analyze a judgment under 523(a)(6) if the court enters judgment under either section 523(a)(2)(A) or 523(a)(2)(B). *In re Cosman*, 616 B.R. at 373.

ACB bears the burden to show by a preponderance of the evidence that Thomas caused a willful and malicious injury. ACB failed to provide affirmative evidence that when Thomas entered into the contractual agreement with ACB he intended to cause injury. In other words, ACB failed to show that Thomas never planned to pay back the loan. Rather than provide any evidence of intentional harm in its complaint or at trial, ACB merely used conclusory language that Thomas intended to and did cause harm (Dkt. 1 at ¶ 48 and Dkt. 50 ¶ at 51). Without showing an intentional injury, ACB does not have a legal claim. Even though the court is not convinced that ACB met their burden, the court finds further investigation into this claim superfluous as judgment under section 523(a)(2)(B) has the same effect.

**CONCLUSION**

ACB must prevail under only one of its counts to obtain a finding that the claim held by ACB is nondischargeable and it has done this.  For the foregoing reasons, the court orders the ACB claim in the amount of $2,812,077.65 against Defendant Thomas R. Merkel exempted from discharge under 11 U.S.C. § 523(a)(2)(B).  Judgment is entered in favor of the Plaintiff in this adversary proceeding.

Dated:  July 16, 2026

_____
Honorable Deborah L. Thorne
United States Bankruptcy Judge